FILED BY ___ HH
Deputy Clerk

Mar 15, 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 15, 2016

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  14-15722-FF   ; 14-15749 -FF
Case Style:  Drummond Company, Inc. v. Terrance Collingsworth, et al
District Court Docket No:  9:14-mc-81189-DMM

The enclosed copy of this Court's Order of Dismissal is issued as the mandate of this court. See
11th Cir. R. 41-4. Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "a
motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of such
order. No additional time shall be allowed for mailing."

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Janet K. Mohler, FF
Phone #: (404) 335-6178

Enclosure(s)

DIS-4 Multi-purpose dismissal letter

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15722

_____

D.C. Docket No. 9:14-mc-81189-DMM

DRUMMOND COMPANY, INC.,

Plaintiff-Appellee,

versus

TERRANCE P. COLLINGSWORTH,
CONRAD & SCHERER, LLP,

Defendants-Appellants,

JACK SCAROLA,
SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.,

Interested Parties-Appellants.

_____

No. 14-15749

_____

D.C. Docket No.  9:14-mc-81189-DMM

In re: JOHN SCAROLA,

Petitioner.

---

Appeals from the United States District Court
for the Southern District of Florida

---

Before ED CARNES, Chief Judge, MARTIN, Circuit Judge, and WALTER,[*]
District Judge.

ED CARNES, Chief Judge:

Subpoenas seeking documents were issued to an attorney and his law firm who are not parties to this lawsuit. They filed a motion to quash on work product grounds. After the district court denied their motion, instead of producing the subpoenaed documents, they appealed and also filed a petition for a writ of mandamus. The defendants in this lawsuit filed their own appeal from the denial of the motion to quash even though the subpoenas were not addressed to them and they did not object in the district court. As you might imagine, this appeal presents a number of issues of appellate jurisdiction.

## I.

Over a number of years, attorney Terrence P. Collingsworth and his law firm, Conrad & Sherer, LLP (collectively, Collingsworth) have filed a series of lawsuits on behalf of Colombian plaintiffs against Alabama-based oil company

---

[*] Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

Drummond Company, Inc. under the Alien Tort Statute, 28 U.S.C. § 1350.  Those

lawsuits claim that Drummond has attempted to maintain control of its coal mining

operations in Colombia by conspiring with paramilitary groups there, making

Drummond complicit in scores of human rights violations including a number of

murders.  So far none of those lawsuits has been successful.

In 2011 Drummond filed a defamation lawsuit against Collingsworth in

federal district court in the Northern District of Alabama based on a series of

letters that Collingsworth sent to Drummond's customers and business partners

describing Drummond's alleged role in those human rights violations.

Collingsworth contended that the statements in those letters were based on the

testimony of former Colombian paramilitary fighters.  According to Drummond,

however, Collingsworth had paid those witnesses a total of well over $100,000.

Drummond argues that those payments call into question the veracity of the

witnesses' testimony and, in turn, the legitimacy of Collingsworth's defense to the

defamation suit.

To prove that Collingsworth paid the witnesses, Drummond served Florida

attorney Jack Scarola and his law firm, Searcy, Denney, Scarola, Barnhart, &

Shipley, P.A. (collectively, Scarola), with two subpoenas to produce documents.

The connection to Scarola arises from the fact that he serves along with

Collingsworth as counsel for plaintiffs in another lawsuit, which is a multi-district

litigation against Chitquita Brands International, Inc., premised on Chiquita's alleged involvement in similar human rights violations.  As co-counsel in that other case, Collingsworth and Scarola have shared information related to it under confidentiality and common interest agreements.  The subpoenas sought from Scarola documents and communications related to Collingsworth's "provision of security in Colombia" and to "payments made to witnesses or any Colombian paramilitary."

Scarola filed a motion to quash Drummond's subpoenas in the Southern District of Florida.  See Fed. R. Civ. P. 45(d)(3)(A) (providing that a motion to quash should be directed to the district court "where compliance is required").  His motion contended that the subpoenas sought materials protected by the work product privilege and that they imposed an undue burden on him as a nonparty to the defamation case.   He did not submit a privilege log.

The district court denied Scarola's motion to quash, concluding that the work product privilege did not apply because the documents Drummond sought "were prepared for different parties in a different case in which Drummond was not involved."  The court declined to rule on the undue burden issue because the parties had said that they would "continue efforts to limit the burden that the present production request would impose."  The court directed the clerk of court to close the motion to quash case (the only matter pending before it).

4

Scarola appealed the district court's decision.  Collingsworth also appealed,

asserting his own work product privilege in the subpoenaed documents for the first

time.[1]  Scarola also filed a petition for a writ of mandamus, which we consolidated

with both appeals.  We provided the district court judge with the opportunity to

respond to the mandamus petition, which he did.  The underlying defamation case

in the Northern District of Alabama, from which this related litigation sprang, is

ongoing; there is no final judgment in it.

## II.

The threshold issue is whether we have jurisdiction to decide the appeals

from the denial of Scarola's motion to quash the subpoenas.  See Adams v.

Monumental Gen. Cas. Co., 541 F.3d 1276, 1277 (11th Cir. 2008) (noting that a

court has an obligation to raise any questions about its jurisdiction).  The courts of

appeals "have jurisdiction of appeals from all final decisions of the district courts

of the United States . . . ."  28 U.S.C. § 1291.  "A final decision is one by which a

district court disassociates itself from the case."  Doe No. 1 v. United States, 749

F.3d 999, 1004 (11th Cir. 2014) (quotation marks omitted).  It "ends the litigation

on the merits and leaves nothing more for the court to do but execute the

---

[1] Collingsworth never filed a motion to intervene in this Southern District of Florida proceeding.  Nor did he otherwise participate in it before he filed his notice of appeal from the order denying Scarola's motion to quash.  After Collingsworth filed his notice of appeal, he also filed in the district court his own motion to quash the subpoenas issued to Scarola. Collingsworth did that almost a month after the district judge denied Scarola's motion.  That motion to quash was assigned to a different district judge, and it has been stayed pending the outcome of this appeal.

judgment." Id. (quotation marks omitted). "Discovery orders are ordinarily not final orders that are immediately appealable." Id.

There are, of course, exceptions to the final judgment rule. A district court can certify for appeal, and the court of appeals can accept, an order that "involves a controlling question of law as to which there is a substantial ground for difference of opinion" where "immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). But the district court in this case did not do that. Or an aggrieved person can defy a district court's order and then appeal directly from court-imposed contempt sanctions. See Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp., 680 F.2d 743, 745 (11th Cir. 1982). But no one did that in this case.

And a privilege holder can appeal from an order that directs a disinterested third party to produce materials over which the privilege holder claims a privilege of nondisclosure, if he would have no other means of appellate review. See Int'l Horizons, Inc. v. Comm. of Unsecured Creditors (In re Int'l Horizons), 689 F.2d 996, 1001 (11th Cir. 1982). Collingsworth contends that exception applies to his appeal. And under the collateral order doctrine a litigant can appeal immediately from an order that conclusively decides an important question separate from the merits of a case when the order would otherwise be unreviewable. See Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 105, 130 S. Ct. 599, 604 (2009).

Scarola contends that exception applies to his appeal.  We don't think either

exception applies to either appeal.

A.

We turn first to Collingsworth, who contends that we have jurisdiction over

his appeal because the district court's disclosure order demands that Scarola turn

over Collingsworth's own privileged work product.  "Ordinarily, a litigant seeking

to overturn a discovery order has two choices.  Either he can comply with the order

and challenge it at the conclusion of the case or he can refuse to comply with the

order and contest its validity if subsequently cited for contempt for his refusal to

obey."  Rouse, 680 F.2d at 745.  But when a disclosure order is "directed to a

person who has custody of materials as to which another person may claim

privilege of non-disclosure . . . [,] the person who holds the privilege may seek

immediate review of the disclosure order."  In re Int'l Horizons, 689 F.2d at 1001

(quotation marks omitted).  "The justification for permitting immediate appeal

under such circumstances is that the privilege-holder has no power to compel the

custodian of the material to risk a contempt citation for his refusal to comply with

the Court's order."  Id. (quotation marks omitted).  Without the ability to bring an

interlocutory appeal, the privilege holder would be left "powerless to avert the

mischief of the order."  Perlman v. United States, 247 U.S. 7, 12–13, 38 S. Ct. 417,

419 (1918).

But that concern arises only when the privilege holder is not a party to the underlying litigation from which the subpoena came. The Supreme Court made that clear in Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 103, 130 S. Ct. 599, 603 (2009), where it held that a disclosure order adverse to the attorney-client privilege did not warrant interlocutory appeal when the privilege holder was a party to the litigation who could appeal after final judgment. The Court reasoned that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege[,]" because "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." Id. at 109, 130 S. Ct. at 606. When the rights asserted can be vindicated after final judgment, permitting interlocutory appeal of "privilege-related disclosure orders simply cannot justify the likely institutional costs," including "unduly delay[ing] the resolution of district court litigation and needlessly burden[ing] the Courts of Appeals." Id.

Collingsworth attempts to distinguish Mohawk in two ways, neither of which is convincing. He first argues that the Mohawk-mandated patience rule should not extend to cases like this one, where the privilege holder appeals a disclosure order directed at a disinterested third party instead of at the privilege

8

holder himself. Collingsworth points out that we have said Mohawk does not prevent "claimants of privilege who are limited intervenors in a proceeding ancillary to a criminal investigation" from "seek[ing] to prevent the disclosure of information held by a disinterested party" through an interlocutory appeal. Doe No. 1, 749 F.3d at 1007. That's true, but it's also irrelevant. The critical question in Doe No. 1 and in this case is not to whom the disclosure order is directed; it is whether the privilege holder has some other adequate means of obtaining appellate review. In Doe No. 1 we exercised jurisdiction over the interlocutory appeal of a privilege-based disclosure order only after determining that "[a]bsent an interlocutory appeal, [the nonparty privilege holders] would be left with no recourse to appeal the disclosure order." Id. at 1006.

We also explained in Doe No. 1 that Mohawk "foreclosed an interlocutory appeal of an order requiring the disclosure of [privileged] materials" when "the claimant [of the privilege] [is] a party who could appeal a final judgment." Id. at 1007. A number of our sister circuits have reached the same conclusion. See United States v. Copar Pumice Co., Inc., 714 F.3d 1197, 1207–09 (10th Cir. 2013) (declining to exercise jurisdiction over interlocutory appeal of a disclosure order directed to a third party where the appealing privilege holder was a party to the litigation who could appeal from final judgment); Holt-Orstead v. City of Dickson, 641 F.3d 230, 237–38 (6th Cir. 2011) (same); Wilson v. O'Brien, 621 F.3d 641,

9

643 (7th Cir. 2010) (noting that after Mohawk "whether the [disclosure] order is directed against a litigant or a third party, an appeal from final judgment will allow review of the district court's ruling"); see also United States v. Gorski, 807 F.3d 451, 459 (1st Cir. 2015) (exercising jurisdiction over a nonparty privilege holder's interlocutory appeal of a disclosure order directed at a third party after finding that appeal would be the only opportunity for appellate review); United States v. Krane, 625 F.3d 568, 573 (9th Cir. 2010) (same). Collingsworth is a party to the litigation and will have an opportunity to challenge the disclosure order after final judgment.

Collingsworth's second attempt to distinguish Mohawk points out that his challenge to the district court's disclosure order is based on the work product privilege instead of the attorney-client privilege, which was involved in Mohawk. He insists that requiring him to wait until after final judgment to appeal the disclosure order will force him to expose his mental impressions and legal strategies to Drummond, irreparably destroying the adversarial process in the underlying case. We are sympathetic with that concern, but courts "routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system." Mohawk, 558 U.S. at 108–09, 130 S. Ct. at 606. What matters "is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest

as to justify the cost of allowing immediate appeal of the entire class of relevant orders." Id. at 108, 130 S. Ct. at 606.

The Mohawk Court acknowledged that "an order to disclose privileged material may, in some situations, have implications beyond the case at hand." Id. at 112, 130 S. Ct. at 608. But the fact "[t]hat a fraction of orders adverse to the attorney-client privilege may nevertheless harm individual litigants in ways that are only imperfectly reparable does not justify making all such orders immediately appealable as of right under § 1291." Id. (quotation marks omitted). There is some difference between exposing attorney work product and exposing attorney client privilege, but we are not convinced that the difference favors more interlocutory protection for work product. At least one of our sister circuits has concluded that the same rule should apply to both. See Hernandez v. Tanninen, 604 F.3d 1095, 1098–99 (9th Cir. 2010) ("The reasoning of Mohawk, which eliminated collateral order jurisdiction on appeals of disclosure orders adverse to the attorney-client privilege, applies likewise to appeals of disclosure orders adverse to the attorney work product privilege.").

Finding insufficient basis for distinguishing Mohawk, we will dismiss Collingsworth's interlocutory appeal for lack of jurisdiction.

B.

Scarola, for his part, argues that we have jurisdiction over his appeal under the collateral order doctrine, which recognizes that appellate jurisdiction under § 1291 "encompasses not only judgments that terminate an action, but also a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final." Mohawk, 558 U.S. at 106, 130 S. Ct. at 605 (quotation marks omitted). That small class "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." Id. (quotation marks omitted). According to Scarola, the district court's disclosure order satisfies all of those requirements.

Discovery orders generally do not present "important questions" warranting collateral order review. See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 377, 101 S. Ct. 669, 675 (1981) (noting that the Court has "generally denied review of pretrial discovery orders" under the collateral order doctrine); United States v. Ryan, 402 U.S. 530, 530–34, 91 S. Ct. 1580, 1581–82 (1971); Cobbledick v. United States, 309 U.S. 323, 324–27, 60 S. Ct. 540, 540–42 (1940). Once again, most discovery issues can be reviewed effectively on appeal from final judgment. See Firestone, 449 U.S. at 377, 101 S. Ct. at 675. And "in the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may

12

defy the order, permit a contempt citation to be entered against him, and challenge
the order on direct appeal of the contempt ruling." Id.; see also Ryan, 402 U.S. at
532, 91 S. Ct. at 1581–82 ("[O]ne to whom a subpoena is directed may not appeal
the denial of a motion to quash that subpoena but must either obey its commands
or refuse to do so and contest the validity of the subpoena if he is subsequently
cited for contempt on account of his failure to obey."). The Supreme Court
reiterated that rule in Mohawk, holding that "the collateral order doctrine does not
extend to disclosure orders adverse to the attorney-client privilege." 558 U.S. at
114, 130 S. Ct. at 609.

Scarola argues that this longstanding rule doesn't apply to him because he is
a nonparty who cannot appeal from final judgment. We disagree. Although the
Mohawk Court explained that "postjudgment appeals generally suffice to protect
the rights of litigants and ensure the vitality of the attorney-client privilege[,]" it
also emphasized that aggrieved privilege holders have a number of "established
mechanisms for appellate review" other than interlocutory appeal under the
collateral order doctrine. Id. at 109–12, 130 S. Ct. at 606–08.

At least two of those other appellate options were available to Scarola in this
case. Scarola could have refused to comply with the district court's disclosure
order and then appealed after being cited for contempt. Id. at 111, 130 S. Ct. at
608. Or he could have filed a petition for a writ of mandamus with us, which he

did. Id. at 111, 130 S. Ct. at 607. When those other appellate options are available

to a nonparty, collateral order review isn't available. See Ott v. City of

Milwaukee, 682 F.3d 552, 554–55 (7th Cir. 2012) (concluding that after Mohawk

nonparty privilege holders must "resist their subpoena orders more definitively

before [an appellate court] may exercise jurisdiction" over their interlocutory

appeal; for example, by "risk[ing] a contempt order, if they feel strongly that a

prejudgment appeal is necessary").

In support of his position, Scarola cites a few of our pre-Mohawk decisions.

Some dicta in those decisions does suggest that we might review discovery orders

directed at nonparties before final judgment under the collateral order doctrine.

But none of those decisions actually hold as much because the issue was not

presented; they did not actually apply the collateral order doctrine. See In re

Novak, 932 F.2d 1397, 1400–03 (11th Cir. 1991) (affirming an order holding a

nonparty in criminal contempt after he failed to appear at a settlement conference);

Caswell v. Manhattan Fire & Marine Ins. Co., 399 F.2d 417, 422 (5th Cir. 1968)

(exercising jurisdiction over a party's appeal after final judgment of an order

quashing a subpoena issued to a nonparty); Overby v. U.S. Fidelity & Guar. Co.,

224 F.2d 158, 159–63 (5th Cir. 1955) (exercising jurisdiction under the Perlman

doctrine, not the collateral order doctrine, over the Acting Secretary of the

Treasury's appeal of an order requiring the defendant bank to produce documents

over which the Secretary claimed governmental privilege).  A decision cannot hold

anything beyond the facts of the case that gave rise to it.  <u>Edwards v. Prime, Inc.,</u>

602 F.3d 1276, 1298 (11th Cir. 2010).  "Of course, dicta can be considered for

whatever persuasive value it may have."  <u>Castillo v. Sec'y, Fla. Dep't of Corr.</u>, 722

F.3d 1281, 1291 (11th Cir. 2013).  But we are not persuaded by it here,

particularly in light of the Supreme Court's more recent statements to the contrary

in <u>Mohawk</u>.

Scarola also points us to <u>Ariel v. Jones</u>, 693 F.2d 1058 (11th Cir. 1982).  In

that case, the defendant had subpoenaed records from a nonparty located in another

district.  <u>Id.</u> at 1059.  The nonparty moved to quash the subpoena in that district

court, and the court granted the motion.  <u>Id.</u>  The defendant appealed, and we

reviewed the order before final judgment, reasoning that it was "a final disposition

of all issues pending before [the district court]."  <u>Id.</u>

We have never applied that reasoning to a case like Scarola's, where the

district court has denied — instead of granted — a nonparty's motion to

quash.  That's because, in those cases, the nonparty has another means of obtaining

appellate review: he can defy the order and risk a contempt citation.  <u>See Mohawk</u>,

558 U.S. at 111, 130 S. Ct. at 608; <u>see also Shattuck v. Hoegl</u>, 523 F.2d 509, 512–

13, 516 (2d Cir. 1975) (concluding that a party could not immediately appeal an

ancillary order compelling discovery after distinguishing cases where production is

denied and "no other court may ever be in a position to order production");

Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 554 (2d Cir. 1967)

("[W]here disclosure is ordered and the order is not complied with, appellate

review in subsequent contempt proceedings, however risky, is available to one

ordered to disclose who refuses to do so.") (citations omitted); Ochsner v. Millis,

382 F.2d 618, 622 (6th Cir. 1967) (explaining that appellate jurisdiction does not

depend on whether the discovery order arises out of an ancillary proceeding or

whether it is directed at a party or a nonparty, but on "whether the party bringing

the appeal has any other means of obtaining review of the claimed erroneous action

of the district court").

      As the Supreme Court reminded us in Mohawk, "the class of collaterally

appealable orders must remain narrow and selective in its membership."  558 U.S.

at 113, 130 S. Ct. at 609 (quotation marks omitted).  And for good reason:  if that

doctrine is not carefully constrained, it "will overpower the substantial finality

interests § 1291 is meant to further."  Will v. Hallock, 546 U.S. 345, 349–50, 126

S. Ct. 952, 957 (2006).   Except in cases involving the assertion of governmental

privilege,[2] we have "never exercised jurisdiction under the collateral order

doctrine to review any discovery order involving any privilege."  Carpenter v.

---

[2] "It is the law of this circuit that one who unsuccessfully asserts a governmental
privilege may immediately appeal a discovery order where he is not a party to the lawsuit."  In re
Hubbard, 803 F.3d 1298, 1305 (11th Cir. 2015) (citing Branch v. Phillips Petroleum Co., 638
F.2d 873, 879 (5th Cir. Unit A March 5, 1981)). That exception doesn't apply in this case.

Mohawk Indus., Inc., 541 F.3d 1048, 1053 (11th Cir. 2008), aff'd 558 U.S. 100,

130 S. Ct. 599 (2009).  We will dismiss Scarola's interlocutory appeal for lack of

jurisdiction.

## III.

Scarola also filed a petition for a writ of mandamus challenging the district

court's disclosure order.  Mandamus can be an "appropriate avenue to seek review

of discovery orders involving claims of privilege," because it "strikes an

appropriate balance between the concerns of [the policies] to be furthered by the

privilege and the concerns of judicial efficiency."  Carpenter, 541 F.3d at 1054.

The balance it strikes does not favor relief.  Or as we have said, mandamus is "a

drastic and extraordinary remedy reserved for really extraordinary causes

amounting to a judicial usurpation of power or a clear abuse of discretion."  In re

Wellcare Health Plans, Inc., 754 F.3d 1234, 1238 (11th Cir. 2014) (quotation

marks omitted).  To obtain mandamus relief, Scarola must be able to show that he

has "no other adequate means to attain the relief he desires" and "that his right to

issuance of the writ is clear and indisputable."  Id. (quotation marks omitted).  And

"the issuing court, in the exercise of its discretion, must be satisfied that the writ is

appropriate under the circumstances."  Id. (quotation marks omitted).  We are not

satisfied here.

17

In his response to the mandamus petition, the district court judge acknowledged that his disclosure order was "incomplete for not explaining that the common-law protections for attorney work-product extend beyond the Federal Rules of Civil Procedure." That may be so, but the central premise of his ruling was correct: the generalized, blanket assertion of work product privilege does not entitle Scarola to the wholesale protection from Drummond's subpoenas that he sought. See In re Grand Jury Subpoena, 831 F.2d 225, 226 (11th Cir. 1987) ("Blanket assertions of privilege before a district court are usually unacceptable.") (quotation marks omitted). The district judge's mandamus response also explained that, once production of the documents commences, he intends to consider Scarola's work product objections on a case-by-case basis. See id. (explaining that a district court faced with privilege objections should consider the material "on a document-by-document basis" to determine whether each is privileged). That hardly amounts to a "judicial usurpation of power or a clear abuse of discretion" warranting the extraordinary remedy of mandamus relief. Wellcare Health, 754 F.3d at 1238 (quotation marks omitted).

Given the district court judge's explanation and his stated intent, we remand the case to the court so that Scarola can assert any work product privilege he may have on a specific, item-by-item basis, through a privilege log or other procedure the district court specifies, and the district court may rule on those assertions of

privilege and enter any protective order it determines is appropriate.[3]  See Fed. R. Civ. P. 45.

The appeals are **DISMISSED**, the mandamus petition is **DENIED**, and this case is **REMANDED** for further proceedings consistent with this opinion.

.

---

[3] The district court may also address on remand any number of other issues that it has not considered yet, including whether the subpoenas pose an undue burden; whether the parties have waived their right to assert the work product privilege; or whether future discovery motions should be transferred under Fed. R. Civ. P. 45(f).  We express no view on those issues.